KOBRE & KIM LLP

Michael S. Kim (MK-0308)
Francisco J. Navarro (FN-1874)
800 Third Avenue
New York, New York 10022
(212) 488-1200

Andrew C. Lourie (AL-0630)
1919 M Street, N.W.
Washington, D.C. 20036
(202) 664-1900

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| FLUXO-CANE OVERSEAS LTD. and MANOEL FERNANDO GARCIA, | : : : | |
| Plaintiffs, | : | Case No. 08 Civ._____ |
| vs. | : : | |
| NEWEDGE USA, LLC (f/k/a FIMAT USA LLC), | : : | |
| Defendants. | : : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
ORDER TO SHOW CAUSE FOR A TEMPORARY
<u>RESTRAINING ORDER AND A PRELIMINARY INJUNCTION</u>**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS.................................................................................... 2

The Notice of Arbitration.................................................................................. 2

The Customer Agreement and the Financing Agreement Provide For Judicial Resolution of Disputes................................................................................................. 5

Nevertheless, Newedge USA, LLC Filed A Notice Of Arbitration Against Plaintiffs ............ 6

ARGUMENT .................................................................................................... 8

I.    THE COURT SHOULD ENTER A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION AGAINST NEWEDGE ...................................................... 8

1.    The Customer Agreement Contemplates Judicial Resolution of Disputes and ICE Arbitration Rules Do Not Apply........................................................................... 10

2.    The Financing Agreement Contemplates Judicial Resolution of Disputes and And ICE Arbitration Rules Do Not Apply........................................................................... 14

3.    The Letter of Individual Guarantee Does Not Contain An Agreement To Arbitrate And ICE Arbitration Rules Do Not Apply ................................................................. 16

CONCLUSION ................................................................................................. 19

# TABLE OF AUTHORITIES

### CASES

AT&T Technogies, Inc. v. Commn'cs Workers of Am., 475 U.S. 643, 648 (1986)................... 10

Castlewood (US), Inc. v. Nat'l Indem. Co., No. 06 Civ. 6842, 2006 WL 3026039, (S.D.N.Y. Oct.

24, 2006) .................................................................................................................... 18

Iannucci v. The Segal Co., No. 06 Civ. 4720, 2006 U.S. Dist. LEXIS 43339, (S.D.N.Y. June 26,

2006) ......................................................................................................................... 9

Int'l Trust Co. of Bermuda, Ltd. v. Fahnestock & Co., Inc., No. 95 Civ 3865, 1995 U.S. Dist.

LEXIS 15050, (S.D.N.Y. Oct. 11, 1995)................................................................. 9

Maryland Cas. Co. v. Benova, No. 96 CIV 4356, 1996 WL 363136, (S.D.N.Y. Jun. 28, 1996)

(Cederbaum, J.)......................................................................................................... 10

Merrill Lynch Investment Managers v. Optibase, 337 F.3d 125, 131 (2d Cir. 2003). .................. 9

Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Vector Group, Ltd., No. 06 Civ 7135, 2007 U.S.

Dist. LEXIS 47672 .................................................................................................. 15

Reuters, Ltd. v. United Press Int'l, Inc., 903 F.3d 904, 907 (2d Cir. 1990) ................................... 8

See Avant Petroleum, Inc. v. Pecten Arabian Ltd., 969 F. Supp. 42, 44 (S.D.N.Y. 1988) .......... 17

See Roberts v. Atl. Recording Corp., 892 F. Supp. 83, 86 (S.D.N.Y. 1995)................................. 8

Steelworkers of Amer. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960)................. 9

Tellium, Inc. v. Corning, Inc., No. 03 Civ 8487, 2004 U.S. Dist. LEXIS 2289, (S.D.N.Y. Jan 15,

2004).......................................................................................................................... 8

Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc., 60 F.3d 27, 33-34 (2d Cir. 1995)......... 8

Wali v. Coughlin, 754 F.2d 1015, 1025 (2d Cir. 1985)................................................................ 9

<u>RULES</u>

ICE Rule 20.01(f)..................................................................................................... 12

ICE Rule 20.02(b)...................................................................................................... 4

## PRELIMINARY STATEMENT

Plaintiffs bring this order to show cause[1] to enjoin Defendant Newedge USA, LLC from arbitrating claims arising under contracts that did not contain arbitration provisions, which Plaintiffs did not ever agree to arbitrate and which are not subject to arbitration under the rules of the InterContinental Exchange ("ICE").[2] Newedge USA, LLC has served Plaintiffs with a notice of arbitration under the rules of ICE Futures U.S., Inc. (f/k/a/ the New York Board of Trade), asserting claims under three documents, none of which provide for arbitration of disputes between the parties. In fact, two of the agreements contemplate that disputes would be resolved in the courts of New York, not in arbitration. Plaintiffs seek the Court's immediate intervention to prevent them from being improperly forced into arbitrating non-arbitrable claims.

Plaintiffs' entitlement to preliminary injunctive relief in this case is clear. First, it is well-established in this Circuit that being compelled to arbitrate claims for which no arbitration agreement exists constitutes *per se* irreparable harm. Second, Plaintiffs will likely prevail on their claim for a permanent injunction against arbitration since none of the agreements at issue, nor any other agreement between the parties, contains any applicable arbitration provision. To

---

[1] On March 10, 2008, Plaintiffs notified Defendant Newedge by e-mail and hand delivery of its intention to move by order to show cause for a temporary restraining order and preliminary injunction enjoining Defendant Newedge from arbitrating its claims against Plaintiffs. (See ¶ 1 to the Declaration of Francisco J. Navarro, sworn to on March 10, 2008 (the "Navarro Decl.").) Plaintiffs forwarded a copy of their proposed order to show cause and this memorandum of law to Defendant at that time. (Navarro Decl. ¶ 2.)

[2] Upon information and belief, non-party ICE Futures US, Inc. ("ICE") (f/k/a Board of Trade of the City of New York) is a designated contract market pursuant to the Commodity Exchange Act, with its headquarters located in New York. Upon information and belief, ICE operates a global futures and options exchange for trading in a broad array of "soft" agricultural commodities, including cocoa, coffee, cotton, frozen concentrated orange juice, and sugar.

the contrary, two of those agreements contain forum selection clauses contemplating New York state or federal court as the place to resolve disputes between the parties. Third, ICE rules do not require arbitration of the claims made by Newedge USA, LLC. Finally, the balance of the hardships weighs decidedly in favor of granting the relief Plaintiffs request. At worst, if an injunction is granted and the Court ultimately determines that Newedge USA, LLC's claims are arbitrable, Newedge USA, LLC will only have suffered a short delay in receiving Plaintiff's answer to its Notice of Arbitration. By contrast, if the Court fails to issue an injunction, but later concludes that Newedge USA, LLC's claims are not arbitrable, Plaintiffs will have been required to move forward with arbitration and thereby suffer *per se* irreparable harm as recognized in this Circuit.

For the reasons detailed below, Plaintiffs respectfully request that their request for a temporary restraining order and a preliminary injunction be granted.

## STATEMENT OF FACTS

### The Notice of Arbitration

On or about February 13, 2008, Newedge USA, LLC filed a Notice of Arbitration with ICE, naming Fluxo-Cane and Mr. Garcia as respondents (the "Notice"). In it, Newedge USA, LLC claims that it and an affiliate named Newedge Group (UK Branch) are entitled to recover US $5,106,889.59 from the respondents. (See Verified Complaint ¶ 10, filed on March 10, 2008, (the "Verified Complaint")).

*Newedge USA, LLC was Fluxo-Cane's Broker To Assist Fluxo-Cane In Its Own Trading.* The Notice states that Fluxo-Cane was Newedge USA, LLC's customer, maintaining an account with Newedge USA, LLC. In essence, Fluxo-Cane used Newedge USA, LLC as a broker to assist Fluxo-Cane in purchasing and selling commodity futures and option contracts. Indeed, the

Notice explains that the legal relationship between the two entities was formed as a result of a "Customer Agreement" signed by both parties. Thus, the Notice states, Newedge USA, LLC was Fluxo-Cane's broker in conducting trades for Fluxo-Cane's own account as to other counterparties in the marketplace. There is no allegation that Fluxo-Cane conducted transactions directly with Newedge USA, LLC as a counterparty. (Verified Complaint ¶ 11-12.)

*Newedge USA, LLC's Claim Against Fluxo-Cane Arises From Margin Calls To Which Newedge USA, LLC Is Purportedly Entitled Under The Customer Agreement.* The Notice does <u>not</u> allege that Fluxo-Cane caused any losses *to Newedge USA, LLC* as a result of Fluxo-Cane's orders or transactions. Rather, the Notice alleges that in January 2008, Fluxo-Cane's trading caused losses *to Fluxo-Cane itself* and in turn, Newedge USA, LLC had the legal right to demand further capital to satisfy margin requirements[3] pursuant to the Customer Agreement. <u>See</u> Verified Complaint. Exhibit 1 at 3 ("[A]s a result of losses *incurred by Fluxo-Cane* on [certain sugar futures and options transactions], Newedge [USA, LLC] issued a margin notice in the amount of $5,000,000"). According to the Notice of Arbitration, Fluxo-Cane failed to meet these margin calls and, as a consequence, Fluxo-Cane allegedly owes Newedge $2,285,355.59 pursuant to the terms of its Customer Agreement executed on March 8, 2007. (Verified Complaint ¶ 13-14.)

*Newedge Group (UK Branch) Lent Money To Fluxo-Cane, Which Mr. Garcia Guaranteed.* The Notice also purports to press claims on behalf of Newedge Group (UK Branch), although that entity is not a claimant. Again, the Notice invokes the claimant's rights under the Customer Agreement; under such agreement, Newedge USA, LLC has the contractual right to pursue claims on behalf of Newedge Group (UK Branch). Newedge Group (UK Branch)

---

[3] A "margin requirement" is the minimum amount of capital a customer must maintain with a broker to conduct trading in certain levels of commodity futures.

claims rights under a so-called "Financing Agreement" signed by Fluxo-Cane, Newedge USA, LLC, and Newedge Group (UK Branch). Under the Financing Agreement, Fluxo-Cane obtained loans from Newedge Group (UK Branch) to use as a margin in its account maintained at Newedge USA, LLC. This loan was guaranteed by Mr. Garcia through a "Letter of Individual Guarantee." (Verified Complaint ¶ 15-16.)

*Newedge Group (UK Branch)'s Claim Against Fluxo-Cane And Mr. Garcia Allegedly Arises From Newedge Group (UK Branch)'s Rights Under The So-Called "Financing Agreement" And "Letter of Individual Guarantee."* The Notice purports to bring a claim by Newedge USA, LLC against Fluxo-Cane "as agent of" Newedge Group (UK Branch) for an additional US $2,821,534.00. This is simply an action to collect on a loan; there is no allegation that Fluxo-Cane caused any losses to Newedge Group (UK Branch) directly through any commodity or futures transactions or orders; indeed, the Notice alleges that Newedge Group (UK Branch) was a "bank" that lends money. According to the Notice, when Fluxo-Cane failed to meet the margin demand of Newedge USA, LLC in its trading account, Fluxo-Cane had allegedly borrowed US $2,821,534.00 from Newedge Group (UK Branch) pursuant to the Financing Agreement. As stated above, Mr. Garcia allegedly guaranteed such amounts pursuant to a Letter of Individual Guarantee. (Verified Complaint ¶ 17-18.)

Newedge does not address in its Notice the fact that the Customer Agreement and Financing Agreement expressly contemplate that litigation in New York, not arbitration in ICE or in any other arbitral forum, is the method of resolving disputes. Rather, Newedge conclusorily asserts, without explanation, that its dispute is among ICE members, and claims that the dispute is an "Allowable Claim" subject to arbitration pursuant to ICE Rule 20.02(b). (Verified Complaint ¶ 19-20.)

**The Customer Agreement and the Financing Agreement Provide For Judicial Resolution of Disputes**

Plaintiff Fluxo-Cane Overseas, Ltd. ("Fluxo-Cane") is a corporation organized under the laws of the British Virgin Islands. (Verified Complaint ¶ 6.) Plaintiff Manoel Fernando Garcia is the sole owner and president of Fluxo-Cane. (Verified Complaint ¶ 7.) Fluxo-Cane is engaged in the business of trading sugar and alcohol for overseas import/export, including shipment to the United States. (Verified Complaint ¶ 21.) As part of its business, Fluxo-Cane traded in Sugar No. 11 futures and option contracts through a number of clearing brokers on a contract market operated by ICE Futures US, Inc. ("ICE"). (Verified Complaint ¶ 22.) As stated above, one of the clearing brokers that Fluxo-Cane traded through is Defendant Newedge USA, LLC (f/k/a Fimat USA, LLC). (Verified Complaint ¶ 23.)

Whereas Fluxo-Cane's trading activities on ICE were governed by the rules promulgated by ICE (the "ICE Rules"), its contractual relationship with the clearing brokers through which it traded was governed by individual customer agreements and other ancillary contracts between Fluxo-Cane and each of its brokers. Thus, in the case of Newedge, the respective rights and obligations of Fluxo-Cane as customer and Fimat USA (as Newedge USA, LLC was then known) as clearing broker were set forth in a customer agreement dated March 8, 2007 (the "Customer Agreement" referenced above in the Notice). As set forth below, the Customer Agreement has no arbitration provision and contemplates that disputes arising under it are to be brought in a judicial forum in New York.

The Customer Agreement was contained on pages 7-17 of a packet of new account materials provided by Fimat USA to Fluxo-Cane (the "New Account Materials"). (Verified Complaint Exhibit 2.) In addition to the Customer Agreement, the New Account Materials contained instructions, risk disclosures, as well as other agreements, including, on page 22, a

5

form of contract captioned "Arbitration Agreement." (Id.)  The bottom of the arbitration form contains the legend, in bold type, "YOU NEED NOT SIGN THIS AGREEMENT TO OPEN AN ACCOUNT WITH FIMAT USA, LLC."  (Id.)  Fluxo-Cane executed the Customer Agreement on March 8, 2007, but did not execute the form of arbitration agreement.  Thus, the only operative provision in the New Account Materials relating to dispute resolution was the previously mentioned clause mentioning a judicial forum in New York.

To accommodate the margin call requirements in the master trading facility established pursuant to the Customer Agreement, FIMAT UK (as Newedge Group (UK Branch) was then known) offered Fluxo-Cane a demand loan margin financing facility (the "Financing Agreement" referenced above in the Notice).  (Verified Complaint ¶ 31.)  The Financing Agreement was executed by Fluxo-Cane on April 9, 2007 and Fimat UK on June 1, 2007.  (Id.)  The Financing Agreement provides that all disputes there under are to be brought in a court sitting in New York.  (See id at ¶ 32).

Both the Customer Agreement and the Financing Agreement were supported by a personal guarantee, dated December 21, 2006, executed by Mr. Garcia in favor of Fimat USA and Fimat UK (the "Letter of Individual Guarantee" referenced above in the Notice).  (Verified Complaint Exhibit 4.)    The Letter of Individual Guarantee did not contain an arbitration provision or any other agreement to arbitrate disputes arising there under.

**Nevertheless, Newedge USA, LLC Filed A Notice Of Arbitration Against Plaintiffs**

On or around February 13, 2008, Newedge USA, LLC filed a Notice of Arbitration with ICE, naming Fluxo-Cane and Mr. Garcia as respondents (the "Notice").  (Verified Complaint Exhibit 1.)  In it, Newedge attempts to combine three claims: one for itself against Fluxo-Cane, one for Newedge Group (UK Branch), which is not alleged to be a Member of ICE, against

Fluxo-Cane and a claim for both Newedge USA, LLC and Newedge Group (UK Branch) for the sum total of the two claims referred to above against Mr. Garcia personally, calculated as follows:

- US $2,285,355.59 allegedly owed by Fluxo-Cane to Newedge USA, LLC under the Customer Agreement as a futures account margin deficit in its clearing account;

- US $2,821,534.00 allegedly owed by Fluxo-Cane to Newedge Group (UK Branch) under the Financing Agreement as amounts outstanding on Fluxo-Cane's demand loan facility; and

- US $5,106,889.59 (i.e., the total amount allegedly owed under the Customer Agreement and Financing Agreement) allegedly owed by Mr. Garcia to Newedge USA, LLC under the Letter of Individual Guarantee.

Newedge USA, LLC does not address in its Notice the fact that the Customer Agreement and Financing Agreement expressly contemplate that litigation in New York, not arbitration in ICE or in any other arbitral forum, is to be the method of resolving disputes. Rather, Newedge USA, LLC conclusorily asserts, without explanation, that the dispute is among ICE members, and that its claim is an "Allowable Claim" subject to arbitration pursuant to ICE Rule 20.02(b). Nowhere in the Notice does Newedge USA, LLC allege even the most basic prerequisites of Rule 20.02 – that it engaged in a specific type of commodities/futures transaction with Fluxo-Cane and that such a transaction directly caused a loss to Newedge. In addition to declining to explain how its claims on their face fall under the definition of "Allowable Claims", Newedge USA, LLC also does not explain how or why a claim of an entity that is not an ICE member (Newedge Group (UK Branch)) should be arbitrable under ICE arbitration rules. ( Indeed, Newedge USA, LLC's only power to press claims on behalf of Newedge Group (UK Branch) arises out of the Customer Agreement, which contemplates dispute resolution in New York courts and which contains an *unsigned* optional arbitration clause).

On February 21, 2008, ICE forwarded a copy of the Notice to Fluxo-Cane and Mr.

Garcia, informing them that they had twenty days from the date of receipt of the Notice – i.e.,

until Wednesday, March 12, 2008 – to submit an answer and to assert any counterclaims.

(Verified Complaint Exhibit 6.)

## ARGUMENT

**I.    THE COURT SHOULD ENTER A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION AGAINST NEWEDGE**

It is well-settled in the Second Circuit that a preliminary injunction should be granted

where the moving party establishes that it will suffer irreparable harm in the absence of

injunctive relief and either: (i) a likelihood of success on the merits of its case; or (ii) sufficiently

serious questions going to the merits to make them a fair ground for litigation and a balance of

the hardships that tips decidedly in the movant's favor.  See, e.g., Tom Doherty Assocs., Inc. v.

Saban Entertainment, Inc., 60 F.3d 27, 33-34 (2d Cir. 1995).  The standard for obtaining a

temporary restraining order is the same as for a preliminary injunction.  See Roberts v. Atl.

Recording Corp., 892 F. Supp. 83, 86 (S.D.N.Y. 1995).  As detailed below, these requirements

are amply satisfied here and Plaintiffs' request for injunctive relief should therefore be granted.

### A.    Plaintiffs Will Suffer Irreparable Harm If A Temporary Restraining Order And Preliminary Junction Is Not Granted

A showing of irreparable harm is a "prerequisite for the issuance of a preliminary

injunction."  Reuters, Ltd. v. United Press Int'l, Inc., 903 F.3d 904, 907 (2d Cir. 1990) (internal

quotations omitted).  It is well-settled in this Circuit that irreparable harm is established *per se*

where a party will be forced to arbitrate a dispute that it did not agree to arbitrate.  Tellium, Inc.

v. Corning, Inc., No. 03 Civ. 8487, 2004 U.S. Dist. LEXIS 2289, at *8 (S.D.N.Y. Jan 15, 2004)

("Compelling arbitration of a matter not properly subject to arbitration constitutes 'per se

irreparable harm.'"); Int'l Trust Co. of Bermuda, Ltd. v. Fahnestock & Co., Inc., No. 95 Civ.

3865, 1995 U.S. Dist. LEXIS 15050, at *6 (S.D.N.Y. Oct. 11, 1995) ("A party that has not agreed to arbitrate a dispute will suffer irreparable harm if it forced to submit to arbitration.").

As discussed below, Plaintiffs have not agreed to arbitrate the claims under the Customer Agreement, the Financing Agreement, or the Guarantee, which documents form the basis of the claims made by Newedge USA, LLC in the Notice. To the contrary, the Customer Agreement and Financing Agreement contemplate dispute resolution in New York courts. In addition, despite Newedge USA, LLC's conclusory assertion that its claim is subject to ICE arbitration, as set forth below, the arbitration rules of ICE are <u>not</u> applicable here. Accordingly, Plaintiffs will be irreparably harmed if forced to resolve those claims in an arbitral forum rather than a judicial one. <u>Id.</u>

**B.     <u>Plaintiffs Are Likely To Succeed On The Merits</u>**

In the Second Circuit, a party seeking a preliminary injunction need only show that "the probability of his prevailing is better than fifty percent" to establish a sufficient likelihood of success on the merits. <u>Wali v. Coughlin</u>, 754 F.2d 1015, 1025 (2d Cir. 1985); <u>see</u> <u>also</u> <u>Iannucci v. The Segal Co.</u>, No. 06 Civ. 4720, 2006 U.S. Dist. LEXIS 43339, at *13 (S.D.N.Y. June 26, 2006) (granting movant a temporary restraining order). This standard can be met even where "there may remain considerable room for doubt" as to whether a movant is likely to succeed. <u>Wali</u>, 754 F.2d at 1025. Here, Plaintiffs far exceed the required showing of a fifty percent likelihood of success due to the absence of an agreement to arbitrate the claims at issue in the Notice.

It is axiomatic that "arbitration is a matter of contract." <u>Merrill Lynch Investment Managers v. Optibase</u>, 337 F.3d 125, 131 (2d Cir. 2003). Accordingly, "a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit." <u>Steelworkers of Amer. v. Warrior & Gulf Navigation Co.</u>, 363 U.S. 574, 582 (1960); <u>see also</u>

AT&T Technologies, Inc. v. Commn'cs Workers of Am., 475 U.S. 643, 648 (1986).  Because Plaintiffs have not agreed in any contract with Newedge to submit to arbitration and ICE rules do not mandate arbitration here, the Court should enjoin Newedge USA, LLC from seeking arbitration of the disputes described in the Notice.  See Maryland Cas. Co. v. Benova, No. 96 CIV 4356, 1996 WL 363136, *2 (S.D.N.Y. Jun. 28, 1996) (Cederbaum, J.) ("The issue of whether a dispute has been excluded from the [arbitration] agreement is determined by the courts, not the arbitrator.")

1.    **The Customer Agreement Contemplates Judicial Resolution of Disputes and ICE Arbitration Rules Do Not Apply**

In its Notice of Arbitration, Newedge USA, LLC seeks to recover US $2,285,355.59 allegedly owed by Fluxo-Cane to Newedge USA, LLC under the Customer Agreement as a "futures account margin deficit" in its clearing account.  (See Verified Complaint ¶ 14.)  This claim is not arbitrable either under the Customer Agreement, or under the arbitration provisions of ICE Rule 20.02(b).

The Customer Agreement contains a forum provision which contemplates that disputes between the parties would be litigated in a New York state or federal court.  In Section V.A. of the Customer Agreement, Newedge USA, LLC (then known as FIMAT) and Fluxo-Cane (defined as "Customer") agreed that:

> All disputes between FIMAT [defined as Fimat USA, LLC] and Customer [i.e., Fluxo-Cane] *including, but not limited to*, disputes arising directly or indirectly as a result of, or the relationship established as a result of, this Agreement, shall be governed by the substantive laws of the State of New York, without regard to principles of choice of law…..  Customer irrevocably submits to the jurisdiction of the courts of New York and of the Federal Courts of the Southern District of New York with respect to litigation relating to all such disputes, including, but not limited to, disputes arising directly or indirectly as a result of or the relationship established as a result of this Agreement and transactions subject to this Agreement, agrees to commence actions and proceedings and assert claims for relief involving them only such courts (unless Customer has otherwise agreed to arbitrate all disputes with FIMAT, in which case such arbitration shall be held

only in New York City), and consents to service of process by the mailing of copies to Customer by certified mail to Customer's address as it appears on the books of FIMAT.

(Verified Complaint Exhibit 2, p. 14) (emphases added.)

The Customer Agreement's contemplation of litigation rather than arbitration as the forum for disputes between Newedge USA, LLC and Fluxo-Cane is further evidenced by Section V.B. of the Customer Agreement, which required Fluxo-Cane to waive its right to a jury:

> CUSTOMER HEREBY WAIVES TRIAL BY JURY IN ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO, BUT NOT LIMITED TO, DISPUTES ARISING DIRECTLY OR INDIRECTLY AS A RESULT OF, OR THE RELATIONSHIP ESTABLISHED AS A RESULT OF, THIS AGREEMENT OR ANY TRANSACTION IN CONNECTION HEREWITH. CUSTOMER'S WAIVER OF TRIAL BY JURY IS A PREREQUISITE TO, AND INDUCEMENT OF FIMAT TO OFFER, THE OPENING OF CUSTOMER'S ACCOUNT(S).

(Verified Complaint Exhibit 2, p. 14) (emphases in original.) See Benova, 1996 WL 363136 at *2 ("All the terms of the [arbitration] agreement should be considered when determining whether a given dispute must be arbitrated. Even though the words of an arbitration clause may be broad, its scope may be limited by language elsewhere in the agreement that clearly and unambiguously negates or limits it with respect to a matter in dispute.")

That the parties to the Customer Agreement intended to resolve their disputes in a judicial forum is further evidenced by the existence of a separate optional form of arbitration agreement contained in the New Account Materials that Newedge USA, LLC provided to Fluxo-Cane at the time the parties entered into the Customer Agreement, which Fluxo-Cane did not sign. The form of arbitration agreement provided as follows:

> Any controversy or claim ... arising out of or relating to Customer Account(s) with FIMAT, to transactions between FIMAT and Customer, to the Customer Agreement with FIMAT or any other agreement between FIMAT and Customer,

or to the breach of any such transaction or agreement shall … be resolved by arbitration….

(Verified Complaint Exhibit 2. at 22, Form of Arbitration Agreement.)

The proposed form of arbitration agreement also contained a provision expressly informing new customers that "YOU NEED NOT SIGN THIS AGREEMENT TO OPEN AN ACCOUNT WITH FIMAT USA, LLC." (Verified Complaint Exhibit 2 at 22, Form of Arbitration Agreement.)

Because Fluxo-Cane was not willing to resolve all of its disputes with Newedge USA, LLC by arbitration, it declined to sign this form agreement.  Finally, no other agreement exists between the parties to resolve such claims in an ICE arbitration or in any other arbitral forum.

With respect to Newedge USA, LLC's reliance on ICE Rules to provide jurisdiction for arbitration, the ICE Rules provide for mandatory arbitration, pursuant to Rule 20.01(b), only with respect to a limited, narrowly-defined list of five "Allowable Claims", which are set forth at ICE Rule 20.01(f):[4]

"Allowable Claim" shall mean a Claim for losses arising <u>directly</u> from (i) any order or Transaction for the purchase, sale, exercise or expiration of an Exchange Futures Contract or Exchange Option, (ii) any cash market transaction which is part of, or directly connected to, any Transaction, (iii) any documented loan made to a Member by his Clearing member Guarantor for the express purpose of acquiring a Membership, (iv) any dispute concerning the purchase, sale, transfer or ownership of a Membership and (v) the performance of the Clearing Member guarantor's obligations pursuant to the terms of its Guarantee Agreement.  An Allowable Claim shall not include legal or other incidental expenses incurred in connection with any such losses or with the events giving rise to any such losses.

---

[4] In any event, the Customer Agreement purports to supersede any other understandings or agreements to which Newedge USA, LLC and Fluxo-Cane entered into concerning the subject matters addressed in the Agreement.  Presumably, the Agreement, which post-dates the parties agreeing to ICE rules, intended to contemplate litigation between the parties in any event whether the ICE arbitration provisions apply or not.  (Verified Complaint Exhibit 2 at Section V.E).

(Verified Complaint Exhibit 6 at 4 (emphasis added).)    The definition of Allowable Claim thus delineates an exclusive list of narrowly-defined categories of disputes between ICE Members that are subject to arbitration under the ICE Arbitration Rules.

The Notice's claim of right to payment by Newedge USA, LLC pursuant to the Customer Agreement for the futures account margin deficit does *not* fall within the narrow definition of an Allowable Claim because it does not arise directly from any of the types of conduct or disputes enumerated under Rule 20.01(f) as explained below:

*(i) Losses arising directly from any order or Transaction for the purchase, sale, exercise or expiration of an Exchange Futures Contract or Exchange Option* – As explained above, the Notice purports to enforce contractual rights for margin capital contributions pursuant to the Customer Agreement; there is no claim that Fluxo-Cane caused losses to Newedge USA, LLC directly from any Exchange Futures Contract or Option transaction or order; the Notice does not even allege they were counterparties but rather that they were customer and broker.  Indeed, as described above, the Notice alleges that Fluxo-Cane caused direct losses *to itself* (not to Newedge USA, LLC, which was only its clearing broker) as a result of trading.   Indeed, Newedge USA, LLC's claim arises from its purported right under the Customer Agreement for Fluxo-Cane to contribute additional margin capital once Fluxo-Cane sustained such losses.

*(ii) Losses arising directly from any cash market transaction which is part of, or directly connected to, any Transaction* -- The term "Transaction" is defined in the Definitions section of the ICE Rulebook as "any purchase or sale of any Commodity Contract made in accordance with the Rules." (Verified Complaint Exhibit 7 at 14.)  The Notice does not allege that there was any loss caused by Fluxo-Cane directly to Newedge USA, LLC by a purchase or sale of a Commodity Contract.  Rather, as explained above, the Notice purports to enforce a contractual

right for Newedge USA, LLC to demand additional margin capital once Fluxo-Cane allegedly caused *to itself* from trading.

(iii) *Losses arising directly from any documented loan made to a Member by his Clearing member Guarantor for the express purpose of acquiring a Membership* – The Notice does not allege any loan from Newedge USA, LLC to Fluxo-Cane, much less a loan made for the purpose of acquiring an ICE membership.

(iv) *Losses arising directly from any dispute concerning the purchase, sale, transfer or ownership of a Membership* – The parties are not in any dispute regarding Membership purchase/sale, transfer, or ownership.

(v) *Losses arising directly from the performance of the Clearing Member guarantor's obligations pursuant to the terms of its Guarantee Agreement* – The parties are not in any dispute regarding Newedge USA, LLC (the clearing member)'s obligations under any guarantee.

Accordingly Newedge USA LLC's claims pursuant to the Customer Agreement as articulated in the Notice are not subject to either contractual arbitration between the parties, or arbitration under ICE Rules.

## 2.    The Financing <u>Agreement Contemplates Judicial Resolution of Disputes and And ICE Arbitration Rules Do Not Apply</u>

Newedge USA, LLC, "as agent of Newedge UK", seeks arbitration and an award of US $2,821,534.00 allegedly owed by Fluxo-Cane to Newedge Group (UK Branch) under the Financing Agreement, which, according to the Notice, resulted in an outstanding loan owed by Fluxo-Cane when it allegedly defaulted under the futures account margin deficit claimed by Newedge USA, LLC.

Newedge Group (UK Branch) and Fluxo-Cane, however, did not agree to settle disputes arising under the Financing Agreement in arbitration. To the contrary, in Paragraph 9 of the Financing Agreement, the parties expressly agreed to resolve all disputes there under in court:

> All disputes under this agreement shall be resolved by federal or state courts located exclusively in New York, New York, and New York substantive law shall apply..... You hereby consent to the exclusive jurisdiction of all such courts of [sic] tribunals and acknowledge that your consent is a material condition to Fimat UK granting you a demand margin loan facility. All parties hereto waive any right to trial by jury.

(Verified Complaint Exhibit 3 at 2 (emphasis added).)

Moreover, the contracting parties closed the door to any potential argument that an agreement to arbitrate contained in some other place could be imported and applied to disputes arising under the Financing Agreement. Thus, in paragraph 10 of the Financing Agreement, the parties made clear that

> No other agreement exists among the parties related to the demand margin loan facility described herein. The printed language of this agreement will govern unless a change is initialed by all signatories to this agreement. Any subsequent amendment to this agreement must be in writing signed by all signatories to this agreement.

(Verified Complaint Exhibit 3 at 3 (emphasis added).)

As the foregoing provisions make clear, the parties to the Financing Agreement left no doubt as to their intention to litigate, rather than arbitrate, all disputes between them arising under that agreement. By now seeking to arbitrate such disputes, Newedge Group (UK Branch) and Newedge USA, LLC are effectively seeking to rewrite the Financing Agreement and deprive Fluxo-Cane from the benefits of the contract it actually agreed to. See Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Vector Group, Ltd., No. 06 Civ. 7135, 2007 U.S. Dist. LEXIS 47672, (S.D.N.Y. June 27, 2007) (where parties did not agree to arbitrate disputes, forcing arbitration would deny a party the benefit its bargain).

Again, the ICE arbitration rules do not apply to claims related to a default under the Financing Agreement.  As a threshold matter, Newedge Group (UK Branch) is not alleged in the Notice to be a Member of ICE.  As a nonmember, it cannot be a party to arbitration under Rule 20.02(b) and Newedge USA, LLC provides no support or explanation for the manner in which it has filed the Notice on behalf of a nonmember.  See ICE Rule 20.02 (b) (requiring "Allowable Claims" to be disputes among Members).  Finally, as set forth above, because the loan made pursuant to the Financing Agreement was not one that was related in any way to financing the purchase of a membership, the ICE Arbitration Rules are inapplicable.   In addition, for the reasons stated above, none of the other definitions of "Allowable Claim" apply to the loan made under the financing agreement.

Indeed, Newedge USA, LLC's purported legal basis for filing a claim on behalf of Newedge Group (UK Branch) underscores the absence of any grounds for arbitration here.  According to the Notice, Newedge USA, LLC's very authority to do so is derived from the Customer Agreement, which as explained above contemplated litigation in New York courts, not arbitration.

### 3.    The Letter of Individual Guarantee Does Not Contain An Agreement To Arbitrate And ICE Arbitration Rules Do Not Apply

In the Notice, Newedge USA, LLC also seeks an award against Mr. Garcia under the Guarantee for the full amount allegedly owed by Fluxo-Cane to Newedge USA, LLC and New Edge Group (UK Branch) (i.e., US $5,106,889.59).  (Verified Complaint Exhibit 1 at 5.)  However, the parties did not agree to arbitrate disputes arising under the Letter of Individual Guarantee.

The Guarantee is entirely silent with respect to the parties' choice of forum.  The absence of a forum selection clause, of course, cannot be construed as even an implicit consent to

arbitration, much less the type of express agreement to arbitrate which the courts require to compel arbitration. See Avant Petroleum, Inc. v. Pecten Arabian Ltd., 969 F. Supp. 42, 44 (S.D.N.Y. 1988) (court must determine that the dispute is covered by a written agreement to arbitrate). Just as no agreement to arbitrate disputes can be found within the four corners of the Guarantee, no other agreement exists between Mr. Garcia and Newedge USA, LLC to settle their disputes under the Guarantee through arbitration.

Like Newedge USA, LLC's claims related to the futures account margin deficit and the margin financing agreement, discussed above, its claim against Mr. Garcia under the Guarantee is not subject to the arbitration provisions of ICE rules. Newedge USA, LLC's demand for payment under the Guarantee does not relate to a loan to purchase membership and does not otherwise fall within the narrow definition of an Allowable Claim because it does not arise "directly" (or even indirectly) from any of the types of conduct or disputes enumerated under Rule 20.01(f). To the contrary, Newedge USA, LLC's claim for payment against Mr. Garcia arises entirely from Mr. Garcia's independent promise to satisfy the debts of Fluxo-Cane, which itself does not even fall within the ambit of ICE arbitration. (Verified Complaint Exhibit 1.) Because Newedge USA, LLC's claim under the Guarantee is not an Allowable Claim subject to arbitration under the ICE Rules, and the Guarantee documents do not provide for arbitration, Plaintiffs are likely to prevail in obtaining an injunction against Newedge to prevent it from pursuing that claim in ICE arbitration.

## C.    **The Balance Of Hardships Tips Decidedly In Plaintiffs' Favor**

For the foregoing reasons, Plaintiffs have demonstrated a strong likelihood of prevailing on their claim that the disputes raised by Newedge USA, LLC under the Financing Agreement, Letter of Individual Guarantee, and Customer Agreement are not arbitrable. Moreover, Plaintiffs are also entitled to an injunction because there exist sufficiently serious questions regarding the

arbitrability of the claims raised in the Notice to make them a fair grounds for litigation, and because the balance of hardships favors an injunction. See, e.g., Castlewood (US), Inc. v. Nat'l Indem. Co., No. 06 Civ. 6842, 2006 WL 3026039, at *5 (S.D.N.Y. Oct. 24, 2006).

Being forced to arbitrate claims as to which no arbitration agreement exists would *per se* constitute irreparable harm to the Plaintiffs. Tellium, Inc, 2004 U.S. Dist. LEXIS 2289, at *8. By contrast, Newedge USA, LLC will suffer no comparable (or even appreciable) hardship if a preliminary injunction is granted. Should the Court ultimately agree with Plaintiffs that some or all of Newedge USA, LLC's claims are not arbitrable, Newedge USA, LLC will have suffered no prejudice at all since it was never entitled to pursue arbitration in the first place. If, instead, the Court finds in Newedge USA, LLC's favor, it will be allowed to resume its claims in an arbitral forum. In sum, the cost to Newedge USA, LLC of an error in granting an injunction is delay in proceeding with arbitration; the cost to Plaintiffs of an error in denying an injunction is irreparable harm. Accordingly, the balance of the hardships overwhelmingly favors granting Plaintiffs' request for preliminary injunctive relief.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant an order enjoining the parties from pursuing arbitration against Plaintiffs on its claims under the Financing Agreement, Customer Agreement, and Letter of Individual Guarantee pending a decision on Plaintiffs' claim for a permanent injunction.

Dated: March 10, 2008
      New York, New York

KOBRE & KIM LLP

By: _____

Michael S. Kim (MK-0308)
Francisco J. Navarro (FN-1874)
800 Third Avenue
New York, New York 10022
(212) 488-1200

Andrew C. Lourie (AL-0630)
1919 M Street, N.W.
Washington, D.C. 20036
(202) 664-1900