Benjamin R. Nagin
Alex J. Kaplan
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5300

William J. Nissen (pro hac vice application forthcoming)
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

*Attorneys for Defendant*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x

FLUXO-CANE OVERSEAS LTD. and MANOEL
FERNANDO GARCIA,

               Plaintiffs,

    -against-

NEWEDGE USA, LLC (f/k/a FIMAT USA, LLC)

               Defendant.

------------------------------------x

No. 08 Civ. 2432 (BSJ)

## DEFENDANT'S FURTHER OPPOSITION TO PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER

# TABLE OF CONTENTS

Page

Table of Authorities ..................................................................................................................... ii

BACKGROUND ........................................................................................................................... 1

I. THIS COURT LACKS SUBJECT MATTER JURSIDICTION ............................................. 3

II. PLAINTIFFS FAIL TO SHOW THAT A TRO IS WARRANTED ...................................... 6

    A. No Probability Of Success On The Merits ........................................................................ 7

        1. Exchange Rules On Arbitration Govern The Dispute ................................................... 8

        2. The Other Agreements Between The Parties Do Not Override
           The Arbitration Agreement In the Exchange Rules ....................................................... 9

    B. No Irreparable Harm ......................................................................................................... 11

    C. Balance Of Hardship Favor Defendant ............................................................................ 13

CONLUSION ............................................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

CASES

AGS Intern. Servs. S.A. v. Newmont USA Ltd.,
  346 F. Supp. 2d 64 (D. D.C. 2004)..................................................................................4

In re Air Crash at Belle Harbor, New York on November 21, 2001,
  No. MDL 1448, 2006 WL 1288298 (S.D.N.Y. 2006)......................................................4

Creaciones Con Idea, S.A. de C.V. v. Mashreqbank PSC,
  232 F.3d 79 (2d Cir. 2000) ...............................................................................................5

Corporacion Venezolana de Fomento v. Vintero Sales Corp.,
  629 F.2d 786 (2d Cir. 1980) .............................................................................................6

First Options of Chicago, Inc. v. Kaplan,
  514 U.S. 938 (1995) .........................................................................................................7

Handelsman v. Bedford Village Assocs. L.P.,
  213 F.3d 48 (2d Cir. 2000) ...............................................................................................4

Inarco Int'l Bank, N.V. v. Lazard Freres & Co.,
  No. 97 Civ. 0378, 1998 WL 427618 (S.D.N.Y. July 29, 1998) .......................................5

Int'l Creation Mgt., Inc. v. Abate,
  No. 07 Civ. 1979, 2007 WL 950092 (S.D.N.Y. Mar. 28, 2007) ......................................6

Jawbone, LLC v. Donohue,
  No. 01 Civ. 8066, 2002 WL 1424587 (S.D.N.Y. June 28, 2002) ....................................5

Local 100, Transport Workers Union, AFL-CIO v. Rosen,
  No. 06 Civ. 4787, 2007 WL 2042511 (S.D.N.Y. 2007).................................................12

Maryland Cas. Co. v. Realty Advisory Bd. on Labor Relations,
  107 F.3d 979 (2d Cir. 1997) ...........................................................................................11

Merrill Lynch Inv. Managers v. Optibase, Ltd.,
  337 F.3d 125 (2d Cir. 2003) ...........................................................................................11

Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,
  460 U.S. 1 (1983) ........................................................................................................3, 7

NXIVM Corp. v. Ross Institute,
  364 F.3d 471 (2d Cir. 2004) ............................................................................................6

Spear, Leeds & Kellogg v. Central Life Assur. Co.,
  85 F.3d 21 (2d Cir. 1996) ........................................................................................7

Steel Co. v. Citizens For A Better Environment,
  523 U.S. 83 (1998) ..................................................................................................6

Universal Licensing Corp. v. Paola del Lungo S.p.A.,
  293 F.3d 579 (2d Cir. 2002) ..............................................................................3, 5

Vittoria Corp. v. New York. Hotel and Motel Trades Council, AFL-CIO,
  30 F. Supp.2d 431 (S.D.N.Y. 1998) ....................................................................12

Westmoreland Capital Corp. v. Findlay,
  100 F.3d 263 (2d Cir. 1996) ..................................................................................4

**STATUTES**

9 U.S.C. § 1 ..........................................................................................................................3

28 U.S.C. § 1331 ..................................................................................................................3

28 U.S.C. § 1332 ..................................................................................................................3

Defendant Newedge USA, LLC (f/k/a Fimat USA, LLC) ("Defendant" or "Newedge") respectfully submits this opposition to Plaintiffs' motion for a temporary restraining order. Plaintiffs' motion for a temporary restraining order ("TRO") must fail because: (1) this Court lacks subject matter jurisdiction over this lawsuit; and (2) Plaintiffs cannot demonstrate the required elements for this extraordinary remedy.[1]

## BACKGROUND

Plaintiff Fluxo-Cane Overseas, Ltd. ("Fluxo-Cane") is a large commercial enterprise that engages in the international trade of sugar. (See Declaration of Benjamin R. Nagin, dated March 18, 2008 ("Nagin Decl."), Ex. 1 (attaching complaint filed by Fluxo-Cane against a third-party relating to payment for a sugar cargo and losses on futures contracts, which reflects the nature of Fluxo-Cane's business).) Fluxo-Cane deals in large cargoes of physical sugar, and in connection with that business, it also engages in transactions in futures contracts and options on the New York Board of Trade (formerly the New York Coffee, Sugar, and Cocoa Exchange), which is part of ICE Futures (the "Exchange"). As a commercial enterprise making large and frequent transactions, Fluxo-Cane became a member of the Exchange to obtain more favorable Exchange fees on its trades. (See Nagin Decl., Ex. 2 (attaching ICE FUTURES U.S. Exchange and Clearing Fees).) Because Exchange memberships must be held by individuals, Plaintiff Garcia also became a member of the Exchange. As set forth in the Exchange Rules, an individual may confer the right to obtain the lower fees on a corporation, and that is what Garcia did for Fluxo-Cane here. (See Nagin Decl., Ex. 3 at 2.09.)

Each member of the Exchange, as a condition of becoming a member, must agree

---

[1] Newedge respectfully submits this further opposition to supplement the brief submission it made to Judge Cedarbaum on March 12, 2008.

to abide by all rules of the Exchange. (See id. at 2.10, 2.27.) These rules include an arbitration procedure for resolving certain disputes with other Exchange members concerning transactions made on the Exchange. (See Cplt. Ex. 6, at Exchange Rule 20.02(b).) Both Fluxo-Cane and Garcia entered into such agreements with the Exchange here. (See Nagin Decl., Exs. 4, 5.)

A trader who makes transactions on the Exchange must have those transactions cleared through a brokerage firm called a a "Clearing Member" of the Exchange. (See id., Ex. 6 at Section 5.1(a) (attaching ICE Clear U.S., Inc. By-Laws, Section 5.1(a) of which provides, in relevant part, that "[o]nly Clearing Members shall be entitled to clear Contracts" traded on the Exchange).) The function of the Clearing Member is to stand between the trader and the Exchange and be bound by and perform all contracts vis a vis the Exchange. (See id., Ex. 7 at ¶ 2(h)(i) (attaching ICE Clear U.S., Inc Clearing Member Agreement, ¶ 2(h)(i) of which states that Clearing members are "bound by, and will timely perform" all contracts they submit for clearance that are not fully performed or closed out in compliance with Exchange Rules).)

Here, Fluxo-Cane entered into an account relationship with Newedge, and executed a customer agreement (the "Customer Agreement"). Unlike Fluxo-Cane, Newedge is a Clearing Member of the Exchange, and may execute trades on the Exchange. (See id., Ex. 8 (attaching List of ICE Futures U.S. Clearing Members).). Fluxo-Cane also entered into an agreement with a Newedge affiliate, whereby the affiliate agreed to provide financing for the transactions in Fluxo-Cane's account with Newedge (the "Financing Agreement"). Notably, the Customer Agreement provides Newedge with the right, as agent for its affiliate, to enforce obligations under the

Financing Agreement against Fluxo-Cane. Moreover, Garcia personally guaranteed all obligations of Fluxo-Cane to Newedge under the Customer Agreement.

As a result of transactions made by Fluxo-Cane in its account with Newedge, Fluxo-Cane incurred losses of over $5 million which it failed to pay, and which Newedge was therefore required to pay to the Exchange. (See Declaration of Laurent Cunin, dated March 12, 2008 (the "Cunin Decl."), at ¶ 6.) As a member of the Exchange seeking to recover these losses which were incurred on the Exchange, on February 13, 2008, Newedge brought an arbitration proceeding at the Exchange against Fluxo-Cane and Garcia pursuant to the Exchange Rules each Plaintiff agreed to observe.

This case is an attempt by Fluxo-Cane and Garcia, who are experienced commercial parties, and who agreed to arbitrate at the Exchange in order to obtain lower rates, to avoid their agreement to arbitrate trading disputes with Newedge at the Exchange.

I.   **This Court Lacks Subject Matter Jurisdiction.**

As an important threshold matter, the Court does not have subject matter jurisdiction over this action, and should deny the TRO for this reason alone. Plaintiffs allege that the Court has subject matter jurisdiction pursuant to both 28 U.S.C. § 1331, contending that this action involves a federal question pursuant to the Federal Arbitration Act (9 U.S.C. § 1) ("FAA"), and pursuant to 28 U.S.C. § 1332, alleging that diversity of citizenship exists. (Cmplt. ¶ 3.) For the reasons that follow, both of these alleged bases for jurisdiction are insufficient.[2]

First, as the Supreme Court made clear in Moses H. Cone Memorial Hospital v.

---

[2]   Here, of course, Plaintiffs, as the parties invoking federal jurisdiction, "bear[] the burden of proving facts to establish that jurisdiction." Universal Licensing Corp. v. Paola del Lungo S.p.A., 293 F.3d 579, 581 (2d Cir. 2002) (citations and internal quotation omitted).

3

Mercury Construction Corp., 460 U.S. 1 (1983), the FAA does not create independent federal-question jurisdiction under 28 U.S.C. § 1331. Id. at 26. "The [Federal] Arbitration Act is something of an anomaly in the field of federal-court jurisdiction. It creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet <u>it does not create any independent federal-question jurisdiction</u> under 28 U.S.C. 1331 (1976 ed., Supp. IV) or otherwise." Id. (emphasis supplied); see also Westmoreland Capital Corp. v. Findlay, 100 F.3d 263, 267 (2d Cir. 1996) ("It is well-established, however, that the FAA, standing alone, does not provide a basis for federal jurisdiction.") (citations omitted). Plaintiffs allege no other ground for federal-question jurisdiction, and none exists.

Second, because Plaintiffs and Defendant are non-U.S. citizens, there is no diversity of citizenship either. Indeed, as the Complaint alleges, Plaintiffs are non-U.S. citizens. See Cmplt ¶¶ 6-7 (alleging that Plaintiff Fluxo is organized under the laws of, and maintains its principal place of business in, the British Virgin Islands, and that Plaintiff Garcia is a Brazilian citizen and resident). Moreover, Defendant is a limited liability company comprised of multiple members, including two non-U.S. entities. (See Declaration of Martin Goldenberg, dated March 18, 2008 ("Goldenberg Decl."), at ¶¶ 5-6.)

In the Second Circuit, the citizenship of LLCs is determined by the citizenship of any of its members. See, e.g., Handelsman v. Bedford Village Assocs. L.P., 213 F.3d 48, 52 (2d Cir. 2000) (finding that LLC was a citizen of Florida because it had a Florida member); Jawbone, LLC v. Donohue, No. 01 Civ. 8066, 2002 WL 1424587, at *5 (S.D.N.Y. June 28, 2002) ("A limited liability corporation has the citizenship of each of

its members."). And significantly, LLCs that are comprised of both U.S. and foreign members are treated as foreign citizens for diversity purposes. Inarco Int'l Bank, N.V. v. Lazard Freres & Co., No. 97 Civ. 0378, 1998 WL 427618, at **1-2, 2 n.3 (S.D.N.Y. July 29, 1998) (dismissing for lack of subject matter jurisdiction where plaintiff was foreign and defendant LLC that was "formed under the laws of New York with members who are citizens of France, Switzerland and the United Kingdom" as well as "United States citizens" was found to be a foreign entity). "For the purposes of diversity jurisdiction, a[n LLC] has the citizenship of its entire membership, not its place of registration. . . . Thus, Defendant [LLC], who has several foreign citizens as members, is treated for diversity purposes as a foreign citizen. As such, diversity is defeated by the foreign citizenship of both Plaintiff[s] and Defendant." Id. at *2 (citations omitted).

Nor is the lack of diversity overcome by Plaintiffs' allegation that Defendant maintains its principal place of business in New York. See Cmplt ¶ 8. It is well established in this Circuit that, "'[e]ven if a corporation organized under the laws of a foreign nation maintains its principal place of business in a State, and is considered a citizen of that State, diversity i[s] nonetheless defeated if another alien party is present on the other side of the litigation.'" Universal Licensing, 293 F.3d at 581 (quoting Franceskin v. Credit Suisse, 214 F.3d 253, 258 (2d Cir. 2000); citing Creaciones Con Idea, S.A. de C.V. v. Mashreqbank PSC, 232 F.3d 79, 82 (2d Cir. 2000) (per curiam) (finding lack of diversity in suit by Mexican corporation against corporation organized under the laws of U.A.E., even if defendant's principal place of business was in New York); Corporacion Venezolana de Fomento v. Vintero Sales Corp., 629 F.2d 786, 790 (2d Cir. 1980) (finding lack of diversity in suit brought by Venezuelan corporation

against Swiss corporation that had its principal place of business in New York)).

Accordingly, because the Court does not have subject matter jurisdiction, the Complaint must be dismissed and the TRO must be denied. See Steel Co. v. Citizens For A Better Environment, 523 U.S. 83, 94 (1998) (noting a "long and venerable line of [Supreme Court] cases" holding that "'[w]ithout jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.'" (quoting Ex parte McCardle, 7 Wall. 506, 514, 19 L.Ed. 264 (1868) (emphasis supplied)).

## II.   Plaintiffs Fail To Show That A TRO Is Warranted.

Assuming, arguendo, that this Court has subject matter jurisdiction, Plaintiffs cannot show that a TRO is justified. Plaintiffs must demonstrate that (1) they have either (a) a probability of success on the merits, or (b) that there are "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor"; and (2) they will suffer irreparable harm if a TRO is not granted. See NXIVM Corp. v. Ross Institute, 364 F.3d 471, 476 (2d Cir. 2004). "'Irreparable harm must be shown by the moving party to be imminent, not remote or speculative.'" Int'l Creation Mgt., Inc. v. Abate, No. 07 Civ. 1979, 2007 WL 950092, at *3 (S.D.N.Y. Mar. 28, 2007) (quoting Reuters Ltd. v. United Press Int'l, Inc., 903 F.2d 904, 907 (2d Cir. 1990)). Plaintiffs have not made the required showings and therefore their motion should be denied.

### A. No Probability of Success on the Merits.

Plaintiffs cannot demonstrate a probability of success on the merits because,

contrary to Plaintiffs' contentions, the underlying dispute between the parties is subject to arbitration. Plaintiffs contend they should not be required to arbitrate this dispute because: (1) the underlying dispute falls outside the scope of the relevant arbitration clause; and (2) separate agreements among the parties do not contain mandatory arbitration provisions. Both contentions are incorrect.

1. <u>Exchange Rules On Arbitration Govern The Dispute</u>.

Like Defendant, Plaintiffs are "Members" of the Exchange, and as Members, they have agreed to comply with the rules of the Exchange, including the arbitration rules. It is well established that such exchange rules are deemed to be a contract among the exchange and its members. See <u>Spear, Leeds & Kellogg v. Central Life Assur. Co.</u>, 85 F.3d 21, 26 (2d Cir. 1996) (explaining that "rules of a securities exchange are themselves contractual in nature," and noting that "prior decisions make clear that the arbitration rules of an exchange are sufficient to compel arbitration of exchange-related disputed *in the absence of a specific written arbitration agreement*.") (internal citations and quotation marks omitted). Moreover, once it is determined that a valid arbitration agreement exists, all doubts are resolved in favor of finding that particular disputes are within the scope of the agreement. See, e.g., <u>First Options of Chicago, Inc. v. Kaplan</u>, 514 U.S. 938, 944-45 (1995); <u>see also Moses</u>, 460 U.S. at 24-25 ("as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration").

Here, Plaintiffs will be unable to establish that the disputes at issue fall outside of the Exchange's Rules on arbitration, to which Plaintiffs are unquestionably bound as Members. Exchange Rule 20.02 provides that "Any Allowable Claim by a Member against another Member . . . shall be settled by arbitration in accordance with these

7

Arbitration Rules." The Exchange Rules define "Allowable Claim" as, inter alia, any "Claim for losses arising directly from (i) any order or Transaction for the purchase, sale, exercise or expiration of an Exchange Futures Contract or Exchange Option . . . ." Cplt. Ex. 6, at Exchange Rule 20.01.

Contrary to Plaintiffs' contentions, the instant dispute is an Allowable Claim. Plaintiffs assert that Newedge "purports to enforce contractual rights for margin capital contributions pursuant to the Customer Agreement," and therefore, that the underlying dispute is not an Allowable Claim. See Plaintiffs' Mem. at 13. However, the dispute arose from losses suffered by Defendant arising directly from Plaintiffs' trading in sugar futures and options on the Exchange, as Defendant was required to cover the losses generated by Plaintiffs' trading on the Exchange. See Cunin Decl., at ¶ 6 ("The $5,106,889.59 loss arose from losses on trades on the Exchange that Newedge as Clearing Broker maintained in an account for Plaintiffs, and Plaintiffs' failure to satisfy the loss. Newedge, as Clearing Broker, was required to pay to the Exchange, on behalf of Plaintiffs, the amount of the loss, $5,106,889.59. The loss, therefore, arose directly from transactions carried out on the Exchange."). Thus, this dispute is very clearly an Allowable Claim, and therefore, must be decided by Exchange arbitration.

As the Notice of Arbitration and Mr. Cunin's Declaration make clear, Newedge is seeking to recover losses on transactions in futures and options contracts traded on the Exchange, and is not seeking to enforce its margin notices. Plaintiffs are correct that in response to losses incurred on transactions, Newedge issued margin notices seeking deposits of $5,000,000, and later of $6,477,670.20, from Fluxo-Cane. See Cmplt. Ex. 1, at 3. But Plaintiffs are incorrect in their argument that Newedge is trying to recover

8

damages based on these margin notices. Those margin notices sought to obtain additional funds from Fluxo-Cane to cover its past trading losses and to secure potential losses on open transactions. Because Fluxo-Cane did not supply the requested margin, Newedge closed out Fluxo-Cane's open positions. After all open positions were closed out, the final amount of the loss Newedge incurred, as a result of Fluxo-Cane's transactions on the Exchange, was $5,106,889.59. Id. at 5. As Mr. Cunin's declaration explains, this was the amount Newedge was required to pay the Exchange as a result of losses incurred from Fluxo-Cane's transactions, which were carried out on the Exchange. See Cunin Decl., at ¶ 6. Accordingly, the underlying dispute is an Allowable Claim subject to mandatory arbitration under the Exchange Rules.

2. The Other Agreements Between the Parties Do Not Override the Arbitration Agreement in the Exchange Rules.

Plaintiffs also argue that they have other agreements with Newedge, which override the arbitration agreement in the Exchange Rules. The Court should reject this argument, because the other agreements do not prevent the dispute from being subject to arbitration at the Exchange.

First, Plaintiffs point to the Customer Agreement they entered into with Newedge in relation to the account where the losses occurred. They argue that this agreement contains an arbitration agreement which was not signed, and that a forum selection provision in the Customer Agreement contemplates that disputes will be litigated in court. Plaintiffs, however, ignore the plain language of this agreement. First, the forum selection clause requires Fluxo-Cane to bring judicial actions exclusively in New York courts, and to submit to the personal jurisdiction of such courts, but does not state that

Newedge has the same obligation. See Cmplt. Ex. 2 at 14, ¶ V.A. Second, the forum selection clause specifically excludes claims from the clause where Fluxo-Cane has otherwise agreed to arbitrate. Id. Third, the Customer Agreement specifically references Exchange Rules, and states that, with inapplicable exceptions, the transactions carried out pursuant to the Customer Agreement will be governed by those rules. Id. at 9, ¶ III.A(3). Given these provisions, Fluxo-Cane cannot maintain that the Customer Agreement overrides the duty to arbitrate under Exchange Rules.

Plaintiffs also contend that the part of Newedge's claim that seeks to recover amounts borrowed by Fluxo-Cane from Newedge's affiliate, and then lost in transactions on the Exchange, is subject to a Financing Agreement, which provides for exclusive jurisdiction in New York courts. However, the Customer Agreement gives Newedge the right to bring the claim for the financed amounts on behalf of its affiliate as agent (Cmplt. Ex. 2 at 12, ¶ IV.D.1), and Newedge has the right under Exchange rules to bring any claim it has against Fluxo-Cane, arising out of transactions on the Exchange, in Exchange arbitration (id. Ex. 6, at Exchange Rule 20.01). Because this claim arises directly from transactions on the Exchange, where the borrowed funds were lost, it is an Allowable Claim, and as shown above, nothing in the Customer Agreement, which gives Newedge the right to sue on this claim, precludes Exchange arbitration.

Finally, Plaintiffs contend that Garcia's personal guarantee of the obligations of Fluxo-Cane does not provide for arbitration, and that the claim against him is not an Allowable Claim. This claim against Garcia is an Allowable Claim because it arises directly from the losses by Fluxo-Cane on transactions on the Exchange; indeed, in the absence of Fluxo-Cane's losses, there would be no claim on the guarantee. Moreover,

the guarantee is silent on the issue of arbitration, and otherwise does not even purport to preclude Newedge from exercising its right.

**B. No Irreparable Harm.**

Plaintiffs do not plead irreparable harm here, and their citation to two cases that are distinguishable does not demonstrate otherwise. In those cases, the party resisting arbitration had not agreed to arbitrate by traditional contract or by exchange rules, and the courts held that the resisting parties would be irreparably injured by requiring them to arbitrate. See also, e.g., Merrill Lynch Inv. Managers v. Optibase, Ltd., 337 F.3d 125, 129-132 (2d Cir. 2003) (finding irreparable harm where party seeking to enjoin arbitration was not signatory to arbitration agreement); Maryland Cas. Co. v. Realty Advisory Bd. on Labor Relations, 107 F.3d 979, 984-85 (2d Cir. 1997) (finding irreparable harm where issues were clearly excluded from arbitration agreement). Here, however, it is undisputed that Plaintiffs agreed to arbitrate disputes with Newedge, and the agreements at issue do not expressly exclude certain issues from arbitration.

Moreover, nor can Plaintiffs' agreement to submit to arbitration be nullified by any suggestion that the dispute here falls outside the scope of the Exchange Rules on arbitration. Indeed, a recent decision by a court in this district shows that, unless the dispute clearly falls outside the scope of the arbitration agreement, there can be no irreparable harm. Local 100, Transport Workers Union, AFL-CIO v. Rosen, No. 06 Civ. 4787, 2007 WL 2042511, at *7 (S.D.N.Y. 2007) ("the Supreme Court has held that a dispute must be referred to arbitration unless it can be said with positive assurance that the dispute does not fall within the scope of the arbitration clause.") (citations and internal quotation omitted); see also Vittoria Corp. v. New York. Hotel and Motel Trades

11

Council, AFL-CIO, 30 F. Supp. 2d 431, 437-38 (S.D.N.Y. 1998) (same).  It certainly cannot be said here -- with "positive assurance," or otherwise -- that the underlying dispute is not subject to Exchange arbitration rules.

Furthermore, in the specific procedural posture here, Plaintiffs have not demonstrated that they will suffer immediate and irreparable harm absent an emergency TRO pending a preliminary injunction hearing.  Indeed, (i) no arbitration hearing has been scheduled; (ii) no arbitration award is imminent; (iii) no arbitrators have been proposed or selected; and (iv) no discovery has been taken or issued.  Given the likely timing of a preliminary injunction hearing, there is simply no need for the extraordinary remedy of a TRO pending the preliminary injunction hearing.  Presumably, the preliminary injunction hearing will be held well before the arbitration even proceeds to a hearing.

Finally, it also bears mention that Plaintiffs were served with the arbitration demand on February 21, 2008.  Exchange rules provided Plaintiffs 20 days to respond, making their response due March 12.  That Plaintiffs waited until the afternoon of March 10 to file an action (or to interpose any objection to arbitration) speaks volumes regarding the non-existent urgency of the present situation.

### C. Balance of Hardships Favor Defendant.

Plaintiffs cannot show that the balance of hardships is in their favor.  For one, Plaintiffs admit that their "trading activities on [the Exchange] were governed by the rules promulgated by" the Exchange (see Cmplt ¶ 24), and Plaintiffs certainly cannot claim any harm in being made to adhere to those rules, which include the arbitration rules.  Moreover, given that Plaintiffs had some 20 days to address this purported

hardship, but chose to delay doing so until the eve of the due date of their answer to the arbitration demand, Plaintiffs cannot claim that they are in need of emergency relief. By contrast, granting the emergency TRO would impose a court order on Defendant, a clearing broker in the futures business, requiring it to consider and address a range of potential effects and requirements arising from a court order of this kind. And, to be sure, further delaying Defendant's effort to proceed with its collection of a lawful obligation in the present economic climate would render a severe hardship. Finally, on March 12, Defendant agreed to extend until March 19 the time in which Plaintiffs must answer the Notice of Arbitration with the Exchange. No further extension is warranted.

## CONCLUSION

For the reasons stated herein, Defendant respectfully requests that the Court deny Plaintiffs' Motion for a Temporary Restraining Order.

Dated: New York, New York
March 18, 2008

Respectfully submitted,

SIDLEY AUSTIN LLP

By: *[signature]*
Benjamin R. Nagin
Alex J. Kaplan
787 Seventh Avenue
New York, New York 10019
(212) 839-5300

-- and --

William J. Nissen (pro hac vice application forthcoming)
Sidley Austin LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

Attorneys for Newedge USA, LLC (f/k/a FIMAT USA LLC)